**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 7** |
| | § | |
| **PATTERSON INVENTORY, LLC, *et al.*,** | § | **Case No. 25-90392 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Docket No. 93** |

**PRELIMINARY OBJECTION OF BANK OF AMERICA, N.A., IN ITS CAPACITY AS ABL AGENT, TO EMERGENCY APPLICATION TO AUTHORIZE THE EVOLUTION SPV DEBTORS' TRUSTEE TO COLLECT CERTAIN ACCOUNTS RECEIVABLE PURSUANT TO THE WIND DOWN ORDER**

Bank of America, N.A., in its capacity as the agent (the "ABL Agent") for the prepetition secured ABL lenders of the majority of the First Brands Group, LLC debtors (collectively, the "FBG Debtors")[2] in the converted chapter 7 cases, by and through its undersigned counsel, submits this preliminary objection (this "Objection") to the *Emergency Application to Authorize the Evolution SPV Debtors' Trustee to Collect Certain Accounts Receivable Pursuant to the Wind Down Order* [Docket No. 93] (the "Evolution Debtors' Application"). In support of this Objection, the ABL Agent respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. The Court should deny the Evolution Debtors' Application for two reasons:

---

[1] The debtors in these chapter 7 cases, along with the last four digits of each debtor's federal tax identification number, are: Patterson Inventory, LLC (2872) (Case No. 25-90392); Patterson Inventory Holdings, LLC (0079) (Case No. 25-90393); Starlight Inventory I, LLC (6698) (Case No. 25-90394); and Starlight Inventory Holdings I, LLC (6472) (Case No. 25-90395). The Evolution SPV Debtors' mailing address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] A complete list of the FBG Debtors in these cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

[3] Capitalized terms used herein but not otherwise defined shall have the meanings given in the Evolution Debtors' Application.

a. ***First***, the Wind Down Order Extension (which, for the avoidance of doubt, includes the statements made by the Court at the July 9, 2026, hearing) did not, and does not, grant the Chapter 7 Trustee for the Evolution SPV Debtors (for purposes of this Objection, the "Trustee") any new or expanded authority to collect, settle, compromise, or otherwise resolve disputed receivables. By its express terms (which are noted further below), the Wind Down Order Extension granted the Trustee's prior motion "for the reasons stated on the record" at the July 9, 2026, hearing. At that hearing, the Trustee represented—and the Court confirmed—that the requested relief was procedural and administrative, was intended only to facilitate transactions already authorized by the Wind Down Order, and neither increased the Trustee's authority nor altered any party's rights under the DIP Order, the Wind Down Order, or any other order of this Court. A transcript of the July 9, 2026, hearing is attached hereto as **Exhibit A**.[4]

b. ***Second***, replacing Hilco, the Court-approved exclusive agent for the collection and resolution of receivables,[5] with the Trustee, whose comparative collection expertise is not established in the current record, threatens to delay the collection process, diminish recoveries, and destroy value for creditors.

2. The Court should view the Evolution Debtors' Application in its proper procedural context. Evolution and the Trustee have expressly represented that the SPV Debtors' interests are aligned with Evolution's in this proceeding. *See Reply of Evolution and SPV Debtors' Trustee Ronald J. Sommers in Further Support of Joint Motion for an Order Amending the Case Caption and Authorizing the Filing of a Second Amended Complaint*, Adv. Pro. No. 25-03800 (CML)

---

[4] The ABL Agent attaches hereto what it understands to be a true and correct transcript of the July 9, 2026, hearing but notes that the transcript erroneously identifies the presiding judge as "Alredo [*sic*] R. Perez."

[5] It is the ABL Agent's understanding from discussions with both Hilco and the FBG Debtors' trustee that Hilco will be retained, *nunc pro tunc* to the September 1, 2026 conversion date, to continue its collection efforts.

[Docket No. 59 at ¶ 3] ("the SPV Debtors' interests are aligned with Evolution's in this proceeding"). "Both [Evolution and the Trustee] seek a declaration that the SPV Debtors own the inventory located at the Warehouses and the proceeds from that inventory . . . ." *Id.* That asserted alignment follows the Trustee's retention of Evolution's own litigation counsel, Elsberg Baker & Maruri PLLC ("EBM"), as special litigation counsel for the Evolution SPV Debtors.[6]

3. Here, the Evolution, through the Trustee, seeks to diminish and cabin this Court's May 29, 2026, Summary Judgment Order. *See Memorandum Opinion and Order*, *Evolution Credit Opportunity Master Fund II-B LP, et al. v. First Brands Group, LLC, et al.*, Adv. Pro. No. 26-03006 (Bankr. S.D. Tex. May 29, 2026), Docket No. 67 (the "Summary Judgment Order"). The Summary Judgment Order rejected Evolution's claimed perfected security interest in non-purchased receivables, holding that Evolution's financing statements did not perfect its asserted lien in such receivables and that the DIP Lenders' perfected liens had priority over Evolution's unperfected interest. Neither Evolution nor the Trustee may obtain through the Evolution Debtors' Application operational control over non-purchased receivables that Evolution failed to establish through its asserted lien. The Trustee himself concedes in the Evolution Debtors' Application that ownership of the identified postpetition BPI receivables remains disputed and is the subject of Adv. Pro. No. 25-03800. *See* Evolution Debtors' Application ¶ 7 ("These Receivables include postpetition accounts receivable generated from sales of inventory at the Warehouses payable to debtor Brake Parts, Inc., LLC."). Nevertheless, the Trustee improperly seeks relief that would grant the practical incidents of ownership—exclusive authority to direct collection strategy, negotiate with customers, select collection professionals, resolve asserted defenses, and settle the

[6] EBM represents Evolution in the same disputes and Evolution has agreed to fund EBM's fees and expenses to the extent the Evolution SPV Debtors' estates do not do so. *See Application of Chapter 7 SPV Debtors Trustee Ronald Sommers to Retain and Employ Elsberg Baker & Maruri PLLC as Special Litigation Counsel* ¶ 4, Case No. 25-90392, Docket No. 38.

receivables—before the Trustee establishes that the receivables are property of the Evolution SPV Debtors' estates.

4. Accordingly, and for the reasons stated below, the ABL Agent respectfully requests that the Court deny the Evolution Debtors' Application.

# I. THE WIND DOWN ORDER EXTENSION DID NOT EXPAND THE TRUSTEE'S AUTHORITY OR MODIFY EXISTING ORDERS

5. The Court should deny the Evolution Debtors' Application, which rests heavily, and improperly, on the Wind Down Order Extension as the source of the Trustee's purported authority to seek exclusive control over the SPV Receivables. Evolution Debtors' Application ¶¶ 8–10. The text of the Wind Down Order Extension does not confer that authority, and the record that the Wind Down Order Extension incorporates confirms that such authority was never sought or granted. The Wind Down Order Extension was entered on an agreed record for a single, narrow, and expressly *non-substantive purpose*: to grant the Trustee authority to sign documents necessary to close sales already authorized under the Wind Down Order. The Wind Down Order Extension did not grant, and was never represented to the Court as granting, any authority over the collection, settlement, or resolution of disputed receivables. The transcript of the July 9, 2026, hearing at which the underlying motion was granted forecloses any contrary reading.

***First*, the Wind Down Extension Motion limits the Wind Down Extension Order to the relief requested.**

6. The Trustee filed the *Emergency Motion to Extend Authority Granted to the Chapter 11 Debtors in Wind Down Order Entered in Chapter 11 Cases to Chapter 7 Trustee in Chapter 7 Cases*, Docket No. 51 (the "Wind Down Extension Motion"), because it was "not clear" whether the Wind Down Order granted him the same authority as the Chapter 11 Debtors, including authority to (a) enter into and perform under the Consulting Agreement with Hilco and

(b) sell or abandon Wind Down Assets free and clear of all liens, claims, encumbrances, and other interests. Docket No. 51 ¶ 3. The stated purpose was to ensure that the Trustee had authority "to consent to and take all steps necessary to effectuate the sale of certain Wind Down Assets over which ownership and lien rights are disputed." *Id.* ¶ 4. The impetus for the emergency request rested on a single transaction: Hilco had negotiated a sale to Ozark Purchasing, LLC that had to close by June 30, 2026. *Id.* ¶¶ 5, 22.

7. The Wind Down Extension Motion's Relief Requested section precisely enumerated the relief sought: (a) extending the Wind Down Order authority to the Trustee; (b) authorizing the Trustee to take steps necessary to effectuate proposed sale transactions, including execution of documents necessary to transfer assets to be sold; (c) authorizing payment of costs of sale and consultant compensation; (d) authorizing Hilco to be paid from sale proceeds under the Consulting Agreement; and (e) authorizing waiver of surcharge rights under sections 506(c) or 552. Docket No. 51 ¶ 23. The Conclusion section repeats those same sale-related requests. *Id.*, Conclusion. Not one of those requests mentions collecting, servicing, settling, or resolving receivables. Indeed, the Wind Down Extension Motion presupposed that Hilco, not the Trustee, would continue performing those receivables services. *Id.* ¶¶ 14–15. Because the Wind Down Order Extension granted "the Motion," and the Motion sought only sale-related authority, it cannot supply the collection, servicing, settlement, or resolution authority the Evolution Debtors' Application now claims. The relief now sought is an improper departure from, not an application of, the relief the Trustee actually requested and obtained. *See VIP Fin. Servs. v. Frost Bank (In re Munn)*, 643 B.R. 141, 153–56 (N.D. Tex. 2022) (order authorizing a short sale did not extinguish a lien where the motion never sought that relief; relief requested but not expressly granted is

implicitly denied, and any ambiguity is resolved by reference to "the record upon which the order was based").

***Second*, the Wind Down Extension Order itself incorporates the hearing record.**

8. Additionally, the Trustee's purported authority fails under the four corners of the Wind Down Order Extension and the hearing record incorporated by its first decretal paragraph. The text does not confer authority to collect, settle, or otherwise resolve disputed receivables. Decretal paragraph 1 provides that "[t]he Motion is GRANTED *for the reasons stated on the record* at the hearing held on July 9, 2026." Wind Down Order Extension ¶ 1 (emphasis added). The Court added that language at the hearing itself to assuage the concerns of the ABL Agent (among others), and for the specific purpose of tying the order to what was said on the record that day:

> THE COURT: And so all I'm going to add to this order is, "The motion is granted for the reasons stated on the record at the July 9 hearing." So that way we can all -- it's clear that we're *tying this this order in [sic] based upon the statements and representations and everybody's understanding here today.*

July 9, 2026, Hr'g Tr. 11:21–12:1 (emphasis added).

9. The transcript is therefore not merely persuasive background; it is the operative basis for the order the Trustee now invokes, and, critically, it controls the order's scope.

***Third*, the Trustee's own counsel repeatedly disclaimed any expansion of authority.**

10. At the outset of the hearing, Ms. Jones, appearing for the Trustee, told the Court in no uncertain terms what the motion was and was not seeking:

> MS. JONES: So the wind-down motion was filed in the main bankruptcy case on March 23rd. . . . [S]o the motion that's filed by the Trustee is really not to try to change anything about the wind down order. It's not trying to impair anybody's rights. It's not trying to modify them, take them away, alter them in any way.

*Id.* 5:12–5:25.

11. Ms. Jones went on to identify, with specificity, the precise problem the motion was designed to solve, which had nothing to do with collection or settlement authority over disputed receivables:

> MS. JONES: So Hilco has identified some buyers to sell some assets. The trustee's hired a consultant or there's an application pending in this case. He's identified some potential buyers for other assets and the trustee wants to move forward with those things. He wants to be able to sign bills of sale that the buyers are wanting to make sure they close the loop on title. *And so everything about this order was -- is administrative really.*
>
> . . .
>
> *And just simply to make sure that the trustee is comfortable and that he has authority to engage in the transactions that the Court authorized* for the [] SPV debtors to engage in under the Wind Down Order, but that he as trustee has authority to do that, and *so that the buyers can be comfortable that the trustee had authority to sign it and they don't have to be worrying about what documents they did or didn't get in the transaction.*

*Id.* 6:8–6:23 (emphasis added).

12. The relief the Trustee described — signature authority to close already-authorized sales and deliver clean title to buyers — bears no relationship to the "exclusive right to collect, settle, or otherwise resolve" disputed postpetition receivables that the Evolution Debtors' Application now seeks. Evolution Debtors' Application ¶ 28(a).

13. Ms. Jones repeated the same limitation later in the hearing, in response to a comment from Debtors' counsel about why the procedure was needed at all:

> MS. JONES: Correct. Because this procedure exists so that assets that are subject to lien and ownership disputes can be sold now. And, you know, it could be down the road Your Honor decides, you know, this asset belongs to this debtor versus the other debtor and at that point, you know, *Mr. Sommers just needs to have a piece of paper he can refer to that says this is the order that said I could do that.*

*Id.* 9:13–9:21 (emphasis added).

14. This is, again, a description of authority to execute sale documents pending resolution of ownership disputes, not authority to unilaterally direct collection strategy, negotiate

with customers, or settle disputed receivables in advance of any determination that the Evolution SPV Debtors own them.

***Fourth*, the Court confirmed the Wind Down Extension Order neither expanded authority nor modified existing orders.**

15. The Court's own statements on the record, which, again, the Wind Down Order Extension expressly incorporates, confirm the limited, non-substantive character of the relief:

> THE COURT: I think what you're doing just makes sense. It's just help -- it's more to facilitate the ability to actually accomplish what's going on. And so, it's -- you can't get it done without -- this is more just in line with what with what's going on here. So I've got -- I've got no issues.

*Id.* 7:21–8:3.

16. Then again, following this comment from Ms. Jones: "it really is just to let you know very clearly we're not trying to change any orders or alter anyone's rights. Everything is exactly as it was," the Court stated:

> THE COURT: No, no, no. It's -- right. And I appreciate the way you worded it as kind of an extension, but it's really more. I understand. I think it -- that provide -- I think you provided more notice, did nothing more, but just come out in front of it. So I've got no issues with this.

*Id.* 8:6–8:19 (emphasis added).

17. Following comments from the Debtors and the Ad Hoc Group, seeking assurance that no substantive rights were being altered, the Court stated:

> THE COURT: Yeah, that's the way I'm reading it. This is more just facilitating what's already been done and not increasing power, changing other orders. It's all kind of within the flow; to get this done I need this so that I can sign stuff.

*Id.* 9:8–9:12 (emphasis added).

18. Every other party who spoke at the hearing understood the relief the same way, including the ABL Agent. Counsel for the Debtors confirmed the order was not "undoing any of those . . . rights in the DIP order . . . [or] the existing Wind Down Order." *Id.* 9:3–9:6. Counsel

for the Ad Hoc Group stated on the record that "[n]othing in this order . . . makes a lien or ownership determination and everyone's rights are reserved." *Id.* 10:19–10:21. And counsel for the ABL Agent stated on the record precisely the limitation the ABL Agent now asks this Court to enforce:

> MR. MCGUIRE: Just to echo what Ms. Gains said. Very similar. I just wanted to add from [our] perspective, it's both the Wind Down Order and the DIP order. Basically, this isn't modifying those at all, but everything else in those orders is [] [still] effective. *This is just procedural to allow the Chapter 7 Trustee to basically participate in the Wind Down Order process*.

*Id.* 11:8–11:14 (emphasis added).

19. No party, including the Trustee, suggested at the hearing that the order would confer authority to collect, settle, or resolve disputed receivables, exclusively or otherwise. The hearing transcript demonstrates that the Wind Down Order language incorporating the statements made at the hearing was added to address the ABL Agent's and other parties' concerns, not to create collection or settlement authority.

***Fifth*, the Wind Down Extension Order's text confirms the same limitation.**

20. Consistent with the entire colloquy above, the operative paragraphs of the Wind Down Order Extension track exactly what Ms. Jones described — authority to execute documents effectuating sales of Wind Down Assets, not authority over receivables collection or settlement:

> a. The authority granted to the Chapter 11 Debtors in the Wind Down Order [ ] is extended to the Trustee in these jointly administered Chapter 7 Cases.
>
> b. The Trustee is authorized to take all steps necessary to effectuate the transactions contemplated by the Wind Down Order, *including execution of documents necessary to effectuate the transfer or disposition of any Wind Down Assets*.

Wind Down Order Extension ¶¶ 2–3 (emphasis added).

21. Paragraph 3 of the Wind Down Order Extension uses disposition language, "transfer or disposition," and does not use the terms "collect, service, settle, and otherwise resolve," the operative language the Consulting Agreement uses to define Hilco's services in connection with the receivables disposition, which the Evolution Debtors' Application now seeks to have redirected to the Trustee. *Compare* Wind Down Order Extension ¶ 3, *with* Consulting Agreement § IV(A)(1) (Hilco authorized to "collect, service, settle, and otherwise resolve the Receivables"). Paragraphs 4 through 6 of the Wind Down Order Extension likewise address only administrative and financial housekeeping matters, such as the payment of sale-related costs, compensation to Hilco, and surcharge rights, not a reallocation of collection authority. Wind Down Order Extension ¶¶ 4–6.

***Sixth*, the Trustee's own proposed order concedes it modifies the very orders he invokes.**

22. Proposed order paragraph 7 provides: "*Except as expressly modified* pursuant to this Order, the Wind Down Order, the Consulting Agreement, the Order Extending Wind Down Order to Trustee, and the FBG Conversion Order shall otherwise remain in full force and effect" (emphasis added). Docket No. 94-11 ¶ 7. The phrase "except as expressly modified" is an admission that the very orders on which the Trustee relies must be modified to grant the relief now being requested.

23. That concession is irreconcilable with the Trustee's contention that the Wind Down Order Extension already conferred exclusive collection authority.

***Finally*, the Evolution Debtors' Application cannot be reconciled with the record that produced the Wind Down Extension Order it relies on.**

24. Against this record, the Trustee's characterization of the Wind Down Order Extension as a source of authority to seek the "exclusive right to collect, settle, or otherwise resolve" disputed SPV Receivables, Evolution Debtors' Application ¶ 28(a), is difficult to square

with what his own counsel told this Court at the July 9 hearing. Having represented on the record repeatedly, and in response to direct questions from the Court and from three other parties, that the relief sought was purely administrative, did not expand the Trustee's authority, and did not alter any party's rights under the Wind Down Order or the DIP Order, the Trustee cannot now treat that same order as the foundation for relief of a fundamentally different character: exclusive operational control over disputed receivables whose ownership remains contested in Adv. Pro. No. 25-03800. *See supra* ¶ 3 (Evolution Debtors' Application ¶ 7 (conceding ownership is disputed)). If the Trustee believed in July that he was being granted authority to control collection and settlement of disputed receivables, that is not what he or his counsel told this Court, the Debtors, the Ad Hoc Group, or the ABL Agent at the time.

25. Because the Wind Down Order Extension did not, on this record, confer any collection or settlement authority beyond signature authority to close already-authorized sales, it supplies no basis for the exclusive collection and settlement authority the Trustee now seeks. The Court should deny the Evolution Debtors' Application on this basis.

## II. DISPLACING HILCO WOULD JEOPARDIZE VALUE AND IS NOT NECESSARY TO PRESERVE ANY PARTY'S RIGHTS

26. If and to the extent the Court reaches the merits on the current record, and even if the Court were to conclude that the Wind Down Order Extension grants the Trustee authority to collect and settle the disputed receivables (which it does not), the Court should still deny the Evolution Debtors' Application. The Trustee seeks not merely to participate in the existing process or to preserve his asserted rights with respect to particular receivables; he seeks to replace Hilco and obtain the exclusive right to collect, settle, and otherwise resolve the receivables listed on his Schedule A. Evolution Debtors' Application ¶¶ 1, 10, 28.

27. That relief would replace the Court-approved collection agent with a new collection structure without any showing that doing so would improve collections, reduce costs, or otherwise increase value. The Court approved Hilco as the Debtors' exclusive agent for Receivables Services after finding that the Consulting Agreement was a reasonable exercise of the Debtors' business judgment, was fair and reasonable, and in the best interests of the estates and creditors. Wind Down Order at 1, ¶ 7 & Findings A–C. Hilco has specialized collection experience and, by virtue of its work in these cases, familiarity with the relevant customers, receivables, account histories, asserted credits and setoffs, and the complex relationships among the FBG Debtors. The Consulting Agreement also authorizes Hilco to collect, service, settle, and otherwise resolve Receivables and, when appropriate, identify and oversee third-party collection counsel. Consulting Agreement § IV(A)(1), (4).

28. By contrast, the Evolution Debtors' Application identifies no comparable collection expertise, established collection infrastructure, or existing familiarity with the accounts at issue. The Evolution Debtors' Application is also silent regarding any transition plan, collection methodology, or basis to conclude that the Trustee's yet-to-be-retained professionals could collect the receivables more quickly or effectively than the Court-approved agent already engaged in that work. From that silence and the existing record, it is reasonable to infer that granting the Evolution Debtors' Application would require a new team of consultants, counsel, and other professionals to reconstruct and replicate work already undertaken by Hilco and its retained professionals, creating additional delay and cost while sowing customer confusion and providing no demonstrated prospect of accelerating recoveries.

29. The ABL Agent has every incentive to maximize and expedite recoveries on the receivables. But faster collection is not achieved by replacing an experienced agent already

familiar with these complicated accounts with a new collection apparatus that must start anew. The proper course is to preserve the existing Court-approved collection process using the mechanisms already identified in the orders. Those mechanisms preserve the parties' respective rights pending resolution of the underlying ownership dispute.

## RESERVATION OF RIGHTS

30. The ABL Agent expressly reserves all rights, claims, defenses, remedies, and arguments, at law or in equity, including the right to supplement, amend, or otherwise modify this Objection and to raise additional objections, arguments, or evidence as further information becomes available or circumstances otherwise warrant. Nothing in this Objection constitutes, or shall be deemed to constitute, a waiver of any such rights, claims, defenses, remedies, or arguments.

## CONCLUSION

WHEREFORE, the ABL Agent respectfully requests that the Court (a) deny the Evolution Debtors' Application, including the Trustee's request for exclusive authority to collect, settle, or otherwise resolve the receivables listed on his Schedule A, and decline to displace or otherwise impair Hilco's authority under the Wind Down Order and Consulting Agreement and (b) grant the ABL Agent such other and further relief as the Court deems just and proper.

Dated: October 12, 2026

*/s/ Tatianna J. Witter*
Tatianna J. Witter
WINSTON TAYLOR LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925
Telephone: 713-651-2600
Email: tatianna.witter@winstontaylor.com

*and*

Daniel J. McGuire (admitted *pro hac vice*)
Scott Ahmad (admitted *pro hac vice*)
WINSTON TAYLOR LLP

300 N. LaSalle, Suite 4400
Chicago, IL 60654
Telephone: 312-558-5600
Email: dan.mcguire@winstontaylor.com
scott.ahmad@winstontaylor.com

*and*

Carrie V. Hardman (admitted *pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700
Email: carrie.hardman@winstontaylor.com

*Counsel for Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I certify that on October 12, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Tatianna J. Witter*
Tatianna J. Witter

# EXHIBIT A

## JULY 9, 2026, HEARING TRANSCRIPT