# EXHIBIT A

## JULY 9, 2026, HEARING TRANSCRIPT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATTERSON INVENTORY LLC, | ) | CASE NO: 25-90392 |
| | ) | |
| | ) | Houston, Texas |
| | ) | |
| Debtor. | ) | Thursday, July 9, 2026 |
| | ) | |
| | ) | 11:04 to 11:18 a.m. |
| ------------------------------ | ) | |

MOTION HEARING

BEFORE THE HONORABLE ALREDO R. PEREZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Ronald Sommers: | ERIN JONES<br>Jones Murray LLP<br>602 Sawyer Street, Ste 400<br>Houston, TX 77007 |
| For U.S. Trustee: | RONALD J. SOMMERS<br>1400 Post Oak Boulevard, Ste 300<br>Houston, TX 77056 |
| For Ad Hoc Group: | ANNELYSE S. GAINS<br>Gibson, Dunn & Crutcher LLP<br>1700 M Street NW<br>Washington, DC 20036 |
| For Debtors: | CLIFFORD W. CARLSON<br>Weil, Gotshal & Manges LLP<br>700 Louisiana Street, Ste 3700<br>Houston, TX 77002 |
| For ABL Agent: | DANIEL J. MCGUIRE<br>Winston & Strawn LLP<br>300 North LaSalle Street, Ste 4400<br>Chicago, IL 60654 |
| Court Reporter: | YESENIA LILA |
| Courtroom Deputy: | YESENIA LILA |

Transcribed by: Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396

Proceedings recorded by electronic sound recording; Transcript produced by transcription service.

HOUSTON, TEXAS; THURSDAY, JULY 9, 2026; 11:04 AM

(Call to Order)

THE COURT: Today is July the 9th. I'm going to call the 11 a.m. case, 25-90392 Patterson Inventory. I'll take appearances in the courtroom. Anyone on the line, please hit 5 star and I will unmute your line.

Good morning.

MS. JONES: Good morning, Your Honor. Erin Jones on behalf of Ronald Sommers, Chapter 7 Trustee. I believe Mr. Sommers is on the phone.

THE COURT: Okay. And just give me one moment. I will start unmuting a few lines. If you're on the line and wish to make an appearance, why don't you hit 5 star.

Here's a 847 number.

MS. GAINS: Morning, Your Honor. For the record, AnnElyse Gains of Gibson Dunn on behalf of the Ad Hoc Group.

THE COURT: All right, good morning. A 713 number.

MR. CARLSON: Good morning, Your Honor. Cliff Carlson -- good morning, Your Honor. Cliff Carlson of Weil Gotshal on behalf of the Chapter 11 Debtors.

THE COURT: Okay. And -- got two more. A 713 number.

MR. SOMMERS: Ron Sommers, the Chapter 7 Trustee and special purpose entity.

THE COURT: All right. Good morning.

And a 312 number.

MR. MCGUIRE: Good morning, Your Honor. Dan McGuire for the ABL agent.

THE COURT: All right. Good morning.

Okay, for the folks who have -- I've -- lines I've unmuted just keep yourselves on mute just so we can all hear each other. And Ms. Jones, what do you wish to tell me.

MS. JONES: Thank you. Well, maybe I'd like to start by giving you an update of where we're at.

THE COURT: Okay. Can you just get a little closer --

MS. JONES: Sorry.

THE COURT: -- to the mic? Yeah, sure.

MS. JONES: Sorry, I felt like I was hearing myself so I thought I was too loud.

THE COURT: Yeah, no, no. We got the double effect going up here.

MS. JONES: Yes. I like hearing my voice back to myself. So we -- the Trustee filed this emergency motion for authority to extend -- or to extend the authority granted under the wind-down order to him. I want to be fair and I want to give everybody a chance to be heard and say what they need to say.

There hasn't been any objection filed and I don't

think principally anybody has a problem with the idea that the trustee can sign documents to consummate these transactions that are contemplated for the wind-down order.

I think there's some -- there are some concerns that have been expressed about the order. And so, you know, we've been working on it and we just haven't gotten to a place where we have an agreed order and so I don't want to -- you know, if people feel the need to file an objection and have another hearing date we can we can do that or, you know, can just kind of walk you through sort of what we're trying to accomplish here.

So the wind-down motion was filed in the main bankruptcy case on March 23rd. The conversion occurs April 9th, effective April 10th. The hearing and then the order on authorizing or approving the wind-down motion and the employment of Hilco was signed a few days after conversion on April 16th.

So the wind-down order treats Chapter 11 debtors and what their rights and what their obligations are with respect to these sale transactions kind of as one thing, you know, as Chapter 11 debtors. And so the motion that's filed by the Trustee is really not to try to change anything about the wind-down order. It's not trying to impair anybody's rights. It's not trying to modify them, take them away, alter them in any way.

There's not really a question here about the effectiveness of the order. Everybody knows the trustee steps in the shoes where the debtor is, you know, at the point of conversion. The issue here is that the trustee needs really an express grant of authority, an order that has his name in it. This is Chapter 7. This is what we need to have for him to be able to administer the estate.

So Hilco has identified some buyers to sell some assets. The trustee's hired a consultant or there's an application pending in this case. He's identified some potential buyers for other assets and the trustee wants to move forward with those things. He wants to be able to sign bills of sale that the buyers are wanting to make sure they close the loop on title. And so everything about this order was -- is administrative really.

And just simply to make sure that the trustee is comfortable and that he has authority to engage in the transactions that the Court authorized for the */SPV debtors to engage in under the wind-down order, but that he as trustee has authority to do that, and so that the buyers can be comfortable that the trustee had authority to sign it and they don't have to be worrying about what documents they did or didn't get in the transaction.

So that's what we're trying to accomplish here. I think where we're at right now is that parties want

different language in the order that kind of preserves or kind of re-preserves rights that are already in the wind-down order, that are already in the DIP order, that are already in any order that Your Honor has entered, right, in the Chapter 11 case.

And so this becomes in the wind-down orders. It's a long order. It's obviously extensively negotiated. You know, there's a little bit of a concern on our part that trying to pick certain things out of it and repeat them. And -- to get an order to give Mr. Sommers authority to sign a bill of sale is going to create confusion around the wind-down order and we just don't want to do that.

So I understand parties have concerns, they have rights, and want them to be heard today. So I don't know if we go forward today, if we reschedule, try to keep working on the order, if Your Honor has some guidance for us. But I just want to let you know where we're at, what the Trustee's trying to accomplish with this motion. And it's really -- there's no intention at all to change anything about what you've already done.

THE COURT: Yeah, no. I'll open it up and see if anyone has any thoughts or comments.

I think what you're doing just makes sense. It's just help -- it's more to facilitate the ability to actually accomplish what's going on. And so, it's -- you can't get

it done without -- this is more just in line with what with what's going on here. So I've got -- I've got no issues. It's just -- I think that that makes eminent sense to me in terms of what you're what you're seeking and the relief that you're requesting, so.

MS. JONES: But we wanted to be here today to be clear for Your Honor and for the record and so everybody is comfortable because people do want other language in the order, but I -- it really is just to let you know very clearly we're not trying to change any orders or alter anyone's rights. Everything is exactly as it was.

THE COURT: No.

MS. JONES: We just need something that says --

THE COURT: No, no, no. It's -- right. And I appreciate the way you worded it as kind of an extension, but it's really more. I understand. I think it -- that provide -- I think you provided more notice, did nothing more, but just come out in front of it. So I've got no issues with this. I'm -- I've --

MR. CARLSON: And Judge, just briefly, if I --

THE COURT: Yep. Yep.

MR. CARLSON: Cliff Carlson. We think the motion -- we think the order makes a lot of sense and it'll help facilitate sales. I think just some of the language that was being -- that was being negotiated being better, I think

just wanted to make clear that none of the rights around surcharge and who has rights, whether it's the Chapter 11 debtors, whether it's the lenders, that this order isn't sort of undoing any of those, any of those rights in the DIP order, I think Mr. Jones said, about the DIP order, the existing wind-down order. So I think with that clarification, we're perfectly fine.

THE COURT: Yeah, that's the way I'm reading it. This is more just facilitating what's already been done and not increasing power, changing other orders. It's all kind of within the flow; to get this done I need this so that I can sign stuff.

MS. JONES: Correct. Because this procedure exists so that assets that are subject to lien and ownership disputes can be sold now. And, you know, it could be down the road Your Honor decides, you know, this asset belongs to this debtor versus the other debtor and at that point, you know, Mr. Sommers just needs to have a piece of paper he can refer to that says this is the order that said I could do that. And so --

THE COURT: So is the order -- the one at 51 is still the one you want me to sign?

MS. JONES: Yes, if -- please. Thank you.

THE COURT: All right. I'll get that signed. I'll sign it now.

MS. GAINS: Your Honor, apologies. I was trying to come off of mute. And this is AnnElyse Gaines of Gibson Dunn --

THE COURT: Yes, Ms. Gaines.

MS. GAINS: -- on behalf of the Ad Hoc Group.

THE COURT: Yep, yep, yep. Absolutely.

MS. GAINS: Sorry about that. I think I was double muted.

So I just want to speak briefly. Again, AnnElyse Gains of Gibson Dunn on behalf of the Ad Hoc Group.

We agree. We were negotiating, I think, a very simple proposed consensual order, adding in some reservation of rights. We unfortunately found out about 10 minutes before this hearing that we weren't aligned. So we didn't have anything in front of you.

I think what I heard stated on the record aligns with the reservation of rights that we were otherwise negotiating. The DIP order stands. Your other order stands. Nothing in this order, you know, makes a lien or ownership determination and everyone's rights are reserved.

So with all of that, we are signed off. I think that from our perspective, it didn't necessarily overcomplicate things to reiterate that. But we are happy to hear on the record that there isn't a dispute with the Chapter 7 Trustee or their counsel, that the DIP order

stands, that this doesn't adjudicate any of those issues. There's obviously live issues in a lot of respects.

THE COURT: No, no, I got it.

MS. GAINS: So -- from our perspective, the record is clear.

THE COURT: Okay. Okay.

MR. MCGUIRE: So Your Honor --

THE COURT: Mr. McGuire.

MR. MCGUIRE: Dan McGuire. Just to echo what Ms. Gains said. Very similar. I just wanted to add from perspective, it's both the wind-down order and the DIP order. Basically, this isn't modifying those at all, but everything else in those orders is so effective. This is just procedural to allow the Chapter 7 Trustee to basically participate in the wind-down order process.

And with that clarifying the record, I think that's all the changes we're looking to make, what we're really looking to accomplish. So if it's clear to everyone that that's what's going on here, I think that we can just enter the order today and move on.

THE COURT: And so all I'm going to add to this order is, "The motion is granted for the reasons stated on the record at the July 9 hearing." So that way we can all -- it's clear that we're tying this this order in based upon the statements and representations and everybody's

understanding here today. So I think that would just --

MS. JONES: Thank you.

THE COURT: -- kind of couch it in. And I mean, based on that, I'll sign the order. Let's see.

MS. JONES: 51-1.

THE COURT: And then you have 51 dash -- the wind-down order is attached to the --

MS. JONES: Oh, is it?

THE COURT: Let's see.

MS. JONES: Is it not attached?

THE COURT: I can check. Hold on. Let me make sure. 51 -- I don't see it attached. What's the --

MS. JONES: Let me see. Did we -- oh. I can -- I mean, I can -- well, you wanted that language, but I can add that to the -- motion's granted for the reasons stated on the record at the July" --

THE COURT: Is there -- is the order somewhere else already here somewhere that I can just add on?

MS. JONES: It -- I think it's referenced. It's 24. It's 2454. Think it's 2454. I don't think it's attached.

THE COURT: Okay.

MS. JONES: So, but I can --

THE COURT: You want to just upload a clean and just let Ms. Saldana know?

MS. JONES: Yes, and just add that language to that line --

THE COURT: For the reasons stated on the record at the July 9, 2026 hearing.

MS. JONES: -- at the end of the first ordering paragraph?

THE COURT: -- motion is granted. Yeah.

MS. JONES: Motion is granted for the reasons set forth at the -- or stated on the record.

THE COURT: Yep. Yep.

MS. JONES: Okay. I will add that. I'll attach the order and I'll reupload it and send it to Ms. Saldana.

THE COURT: Okay. Since I've got you here, I'm just looking. You're looking for an extension of the deadline today (indiscernible)?

MS. JONES: Oh, on the contracts?

THE COURT: Yeah.

MS. JONES: Yes, I filed that. Well, I haven't had any opposition.

THE COURT: June 9th.

MS. JONES: Or nobody's raised anything. I --

THE COURT: Let's see. You're saying, I think we could terminate 37 on this one. Did I grant the -- and then we can terminate --

MS. JONES: I didn't include in that motion -- on

the contracts I did not include any nonresidential real estate. I don't think -- I don't think these letters have any. And, but just wanting to, you know, complete, you know, all of our diligence.

THE COURT: Yep.

MS. JONES: But that that deadline is still in the future. I may or may not ask to extend that --

THE COURT: No, no. I got it.

MS. JONES: -- together with another extension.

THE COURT: That's just with respect to -- yeah.

MS. JONES: So I may file another one that extends both of them, but I really don't think we have any, so I --

THE COURT: I got it.

MS. JONES: -- put that together --

THE COURT: Once you're -- the objection period runs with, like, the extension of professionals and all this stuff.

MS. JONES: I think --

THE COURT: Just let me -- just file a CNO or something and just let us know and we'll --

MS. JONES: On the professionals and the --

THE COURT: Or just let Ms. Saldana know that the -- yeah, the period has run and there's been no objections and we'll get the other -- we'll get the other stuff signed. I think there's some professional stuff out there.

MS. JONES: Okay, sure. I'll do that.

THE COURT: Okay. If not, I will get this signed and I'll enter the extension as well, just because we're here.

MS. JONES: Great. Thank you so much.

THE COURT: All right, folks. Thank you so much. Have a good day.

MS. JONES: Thank you. Is it okay if I sit here just --

THE COURT: Yeah, yeah, absolutely.

MS. JONES: Thank you.

(Proceedings adjourned at 11:18 a.m.)

I N D E X

RULINGS


| | Page | Line |
|---|---|---|
| Emergency motion to extend authority in wind-down order, granted | 9 | 25 |

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



Sonya Ledanski Hyde

Veritext Legal Solutions
330 Old Country Road
Suite 300
Mineola, NY 11501

Date: July 13, 2026