**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 7** |
| | § **(Previously Chapter 11)** |
| **PATTERSON INVENTORY, LLC, *et al.*,** | § |
| | § **Case No. 25-90392 (CML)** |
| **Debtors.**[1] | § |
| | § **Jointly Administered** |

**CHAPTER 7 TRUSTEE OF THE FBG DEBTORS' OBJECTION TO EMERGENCY APPLICATION TO AUTHORIZE THE EVOLUTION SPV DEBTORS' TRUSTEE TO COLLECT CERTAIN ACCOUNTS RECEIVABLE PURSUANT TO THE WIND DOWN ORDER**

[Relates to Docket Nos. 93 & 94]

Eva S. Engelhart, the chapter 7 trustee (the "FBG Trustee") of the jointly administered estates of First Brands Group, LLC and its affiliated debtors (the "FBG Debtors"), including Brake Parts Inc. LLC ("BPI"), files this objection (the "Objection") to the *Emergency Application to Authorize the Evolution SPV Debtors' Trustee to Collect Certain Accounts Receivable Pursuant to the Wind Down Order* [Docket No. 93] (the "Application") filed by Ronald J. Sommers (the "SPV Trustee"), the chapter 7 trustee of Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "Evolution SPV Debtors"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The FBG Trustee does not question the SPV Trustee's desire to monetize estate assets. *See* Application ¶ 1.

[1] The debtors in these chapter 7 cases, along with the last four digits of each debtor's federal tax identification number, are: Patterson Inventory, LLC (2872) (Case No. 25-90392); Patterson Inventory Holdings, LLC (0079) (Case No. 25-90393); Starlight Inventory I, LLC (6698) (Case No. 25-90394); and Starlight Inventory Holdings I, LLC (6472) (Case No. 25-90395). The Evolution SPV Debtors' mailing address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Were the Court writing on a blank slate, the Application might present a reasonable request. But that is not the situation here. The Application is just one of numerous emergency requests filed by the SPV Trustee and Evolution Credit Partners and its affiliates (collectively, "Evolution") seeking to disrupt the status quo. Whether the Application is part of a broader litigation strategy is beside the point because there is simply no basis to replace Hilco, the Court-approved exclusive agent for Receivables Services, and the FBG Trustee's collection counsel, who have been working on these receivables for months and are best positioned to collect them under existing Court orders. *See* Application ¶¶ 6–7. The Application asks the Court to displace them, well after they began their work, as to BPI's seven largest customers. *See id.*, Sched. A.

2. The Court has already approved the framework for collecting BPI's receivables, and selecting the professionals who carry it out is, in the first instance, a matter for BPI's trustee, which is the FBG Trustee. There is no basis for the SPV Trustee to displace the professionals already engaged in this work. Moreover, apart from the SPV Trustee and Evolution, who assert competing ownership claims, the parties with the primary economic interest in these receivables, including the ABL Secured Parties (as defined in the Conversion Order) and the ad hoc group of DIP lenders (the "Ad Hoc Group"), favor maintaining the current arrangement. *Cf.* Application ¶ 26.

3. The FBG Trustee nonetheless recognizes the concerns the Application raises and offers to keep the SPV Trustee better informed and to work with him to address concerns regarding timing and strategy, without displacing the incumbent professionals, through the specific protections set forth in Part IV of the Objection below.

# BACKGROUND

## I. The Chapter 7 Cases

4. On September 24, 2025, certain debtors, including the Evolution SPV Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and on September 28, 2025, First Brands Group, LLC and its remaining debtor affiliates, including BPI, did the same (as applicable, the "Petition Date"). *See* Case No. 25-90399, Docket No. 1, Sched. 1; Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions ¶ 5 [Case No. 25-90399, Docket No. 22] (the "First Day Declaration"). The cases were jointly administered under Case No. 25-90399.

5. On April 9, 2026, the Evolution SPV Debtors' cases were converted to cases under chapter 7. *See* Docket No. 10; Application ¶ 3 n.5. On September 1, 2026, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Case No. 25-90399, Docket No. 3748] (the "Conversion Order"), converting the FBG Debtors' cases to cases under chapter 7. *See id*.

6. That same day, the Office of the United States Trustee appointed Eva S. Engelhart as interim chapter 7 trustee of the FBG Debtors' estates, including BPI's estate. *See* Notice of Chapter 7 Bankruptcy Case [Case No. 25-90399, Docket No. 3753]. Ronald J. Sommers serves as chapter 7 trustee of the Evolution SPV Debtors' estates. *See* Application at 2.

## II. BPI and the Receivables at Issue

7. Before conversion, the FBG Debtors were a leading supplier of aftermarket automotive parts, including braking products, sold to large automotive retailers and distributors. *See* First Day Declaration ¶¶ 9, 20, 23. BPI, one of the FBG Debtors, sold inventory from warehouses in McHenry, Illinois; Patterson, California; and City of Industry, California (the

"Warehouses"), generating post-petition accounts receivable payable to BPI. *See* Application ¶¶ 1, 7.

8. The Application concerns post-petition accounts receivable payable to BPI by its seven largest customers on account of sales from the Warehouses, as listed on Schedule A to the Application as of August 1, 2026 (the "Schedule A Receivables"). See *id.* ¶¶ 1, 7 & Sched. A.

### III. The Wind Down Order and the Incumbent Collection Professionals

9. On April 16, 2026, the Court entered an order [Case No. 25-90399, Docket No. 2454] (the "Wind Down Order") authorizing the FBG Debtors to enter into and perform under a consulting agreement (the "Consulting Agreement") with Hilco Merchant Resources, LLC, Hilco Receivables, LLC, and Hilco Global Professional Services, LLC (collectively, "Hilco"). *See* Application ¶ 6 & n.7. The Wind Down Order and Consulting Agreement made Hilco the FBG Debtors' exclusive agent for "Receivables Services," including the authority to "collect, service, settle, and otherwise resolve" the FBG Debtors' outstanding trade receivables. *Id.* ¶ 6 & n.8 (quoting Consulting Agreement § IV(A)(1)). The Consulting Agreement compensates Hilco through a commission on gross collections. *See id.* ¶ 10 n.10.

10. In furtherance of the Wind Down Order, Katten Muchin Rosenman LLP ("Katten") and Troutman Pepper Locke LLP ("Troutman") were retained to assist in collecting and settling outstanding receivables, including BPI's post-petition receivables. *See* Case No. 25-90399, Docket No. 3581; Application ¶ 7. Following conversion, the FBG Trustee applied to retain Troutman and Clark Hill PLC ("Clark Hill"), each of which have served as special counsel for the Trustee in transitioning collection efforts from the Debtors to the Trustee since the conversion date and are prepared to immediately proceed forward with their pre-conversion efforts. Katten has similarly

been proposed as special counsel for the sale of the FBG Debtors' remaining Wind Down Assets other than receivables.[2]

11. Following conversion of the Evolution SPV Debtors' cases, the SPV Trustee moved for an order extending the Wind Down Order to him in the Evolution SPV Debtors' cases. *See* Docket No. 51. The Court granted that motion "for the reasons stated on the record at the hearing held on July 9, 2026." *Order Extending Wind Down Order to Chapter 7 Trustee and Related Relief* ¶ 1 [Docket No. 61] (the "Wind Down Order Extension").

12. Since their retention, the collection professionals have engaged with BPI's customers, including through written demands, and that work remains ongoing. *See* Application ¶ 14. Many customer balances are subject to asserted credits, setoffs, and other disputes. *See id.* ¶ 15. The Application points to limited movement in BPI's gross receivables balances between April and August 2026. *See id.* ¶¶ 12–13. But collecting receivables of this size from large customers asserting competing positions is rarely linear, and period-to-period balance figures do not capture the work involved in resolving them. Those figures also predate conversion, and the Application was filed only eight days after the FBG Debtors' cases converted, *see* Docket No. 94, so it says nothing about collection efforts under the FBG Trustee. To the extent collection activity slowed in recent weeks, that was the inevitable result of conversion, not any failure by the collection professionals or the FBG Trustee. The FBG Trustee promptly applied to retain her collection counsel effective as of the conversion date, and those professionals are in place and working. *See supra* ¶ 10.

---

[2] *See Application of the Chapter 7 Trustee for Entry of an Order Authorizing Retention and Employment of Troutman Pepper Locke LLP as Special Counsel Effective as of the Conversion Date Pursuant to Sections 327(e), 328(a), and 330 of the Bankruptcy Code* [Case No. 25-90399, Docket No. 3873]; *Chapter 7 Trustee's Application for Entry of an Order Authorizing the Employment and Retention of Clark Hill PLC as Special Counsel to the Chapter 7 Trustee Effective as of the Conversion Date* [Case No. 25-90399, Docket No. 3875]; *Application of the Chapter 7 Trustee for Entry of an Order Authorizing the Retention and Employment of Katten Muchin Rosenman LLP as Special Counsel to the Chapter 7 Trustee Effective as of the Conversion Date* ¶ 13 [Case No. 25-90399, Docket No. 3861].

### IV. The Pending Ownership Dispute

13. Whether the Schedule A Receivables belong to BPI or to the Evolution SPV Debtors is disputed. That dispute is the subject of a pending adversary proceeding, Adv. No. 25-03800 (the "Adversary Proceeding"). *See* Application ¶ 7; Adv. No. 25-03800, Docket No. 1. Nothing in this Objection is intended to address the merits of that dispute.

14. The Application expressly disclaims any request that the Court determine ownership of the receivables. *See* Application ¶ 2.

### V. The Application

15. The Application seeks (a) the exclusive right to collect, settle, or resolve the Schedule A Receivables, (b) authority to retain the SPV Trustee's own consultants and attorneys, and (c) diversion of Hilco's 3% commission to the Evolution SPV Debtors' estates. *See id.* ¶¶ 10 & n.10, 28.

16. The SPV Trustee bases the request on his concerns that collections have been slow, that aggregate, multi-entity settlements could compromise BPI receivables in which he asserts an interest, and that he has not been consulted on collection efforts. *See id.* ¶¶ 12–25. He proposes that interested parties receive a consent right over any settlement and that collections be segregated in the SPV-ABL Wind Down Account. *See id.* ¶ 10. Although styled as an emergency, the Application acknowledges that the SPV Trustee "does not require emergency relief by a specific date certain." *Id.* ¶ 27.

## OBJECTION

### I. Professionals Are Already in Place, and Replacing Them Now Would Add Cost and Delay

17. The Application is premised on a gap that does not exist. The Schedule A Receivables are not unattended. The SPV Trustee does not identify a single receivable that has

been mishandled, compromised, or lost. He simply prefers his own professionals. Nevertheless, under the Wind Down Order, Hilco serves as exclusive agent for "Receivables Services," with authority to "collect, service, settle, and otherwise resolve" Receivables. Application ¶ 6 (quoting Consulting Agreement § IV(A)(1)). The Court approved that arrangement after finding that the Consulting Agreement was "a reasonable exercise of the Debtors' sound business judgment" and "in the best interests of the Debtors, their estates, their creditors, and all parties in interest." Wind Down Order, Finding A; *see also id.*, Findings B, I. Troutman and Clark Hill have been engaged to assist in collecting and settling those Receivables, including the BPI post-petition receivables at issue here. *See supra* ¶ 10. Those professionals have been engaged with BPI's customers since their retention, and that work is ongoing.

18. Replacing the incumbent professionals for the same seven customers, which are among BPI's largest account debtors, would only cause further delay, confusion, disruption, and expense at a critical stage of collection. *See* Application, Sched. A. Customers already in discussions with the FBG Trustee's collection counsel would face new demands from a different set of agents on the same invoices, with uncertainty about whom to deal with, whom to pay, and whether prior discussions still stand. Work already performed by the incumbent professionals would be duplicated at the estates' expense. And disputes over compensation would inevitably follow, as the Application's request to redirect Hilco's 3% commission already previews. *See id.* ¶ 10 n.10.

19. Nor would a change likely accelerate recoveries. The Application itself acknowledges that customers have asserted credits and setoffs against their balances. *See id.* ¶ 15. Resolving those positions with large customers will take substantial time and attention regardless of who is responsible for collection. Yet the Application offers no transition plan, no collection

methodology, and no basis to conclude that the SPV Trustee's yet-to-be-retained professionals would collect these receivables more quickly or effectively than the professionals already engaged. A new team would have to start over: reestablishing customer contacts, re-reviewing account histories, and re-engaging customers already in discussions. In other words, the Application would impose even further delay at a time when the Trustee and existing counsel's efforts are well underway. And the SPV Trustee concedes that the relief is not needed by any date certain. *See id.* ¶ 27. That concession is telling. An application that seeks to displace Court-approved professionals as to BPI's largest receivables, yet admits no emergency exists, is not a response to any urgent harm.

## II. Multiple Parties With an Economic Interest Support the Status Quo

20. Apart from the SPV Trustee and Evolution, the other parties with an economic stake in the Schedule A Receivables, the ABL Secured Parties and the Ad Hoc Group, support leaving the current collection arrangement in place. Those parties hold asserted interests in BPI's assets and, accordingly, in the outcome of these collection efforts.

21. Their preference deserves weight. The SPV Trustee proposed a stipulation granting the relief requested in the Application, and the interested parties declined to agree to it. *See* Application ¶ 26. The SPV Trustee asserts a competing claim to these receivables. *See id.* ¶¶ 1, 7. The Application describes the requested relief as preserving the status quo, *see id.* ¶ 2, but it would do the opposite. Indeed, the SPV Trustee's own proposed order provides that the Wind Down Order, the Consulting Agreement, and related orders remain in effect "[e]xcept as expressly modified pursuant to this Order." Proposed Order ¶ 7 [Docket No. 93-11]. Giving one claimant exclusive control over collection and settlement of disputed assets while ownership is being litigated changes the status quo rather than preserving it. The Application offers no reason to override the considered preference of the parties whose recoveries depend on these receivables.

## III. The Court Has Already Found That Collecting BPI's Receivables Through Hilco Is a Sound Exercise of Business Judgment.

22. Finally, the Schedule A Receivables are invoiced as payable to BPI, an FBG Debtor whose estate the FBG Trustee administers. *See* Application ¶ 7 & Sched. A. The question of who should collect them is not a new one. Rather, the Court answered it when it entered the Wind Down Order, finding that the Consulting Agreement was "a reasonable exercise of the Debtors' sound business judgment, consistent with their fiduciary duties," that its terms were "fair and reasonable," and that entry of the order was "in the best interests of the Debtors and their estates, creditors, and all other parties in interest." Wind Down Order, Findings A, B, I. The Court further provided that the Wind Down Order and the Consulting Agreement bind "any trustees . . . appointed . . . upon a conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee," and that the Consulting Agreement "shall not be subject to rejection or avoidance under any circumstances." *Id.* ¶ 64.

23. In other words, the Court has already approved, as a sound exercise of business judgment and in the best interests of all parties, the very collection framework the FBG Trustee is continuing, and it made that framework binding on her as chapter 7 trustee for the FBG debtors. Continuing under that framework is consistent with the FBG Trustee's duty to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). The Application offers no reason to revisit the Court's findings.

## IV. FBG Trustee's Proposed Protections

24. The FBG Trustee recognizes the SPV Trustee's stated concerns about access to information and about the risk that aggregate, multi-entity settlements could affect BPI receivables in which he asserts an interest. *See* Application ¶¶ 16–18, 24–25. Without conceding any of the Application's characterizations, and to avoid duplicative cost and further motion practice, the FBG

Trustee proposes the following protections with respect to the Schedule A Receivables pending resolution of the ownership dispute:

- **<u>Access to Information</u>.** The FBG Trustee's collection professionals will make available to counsel for the SPV Trustee the customer documents relevant to collection of the Schedule A Receivables.

- **<u>Status Updates</u>.** The FBG Trustee's collection professionals will provide counsel for the SPV Trustee with biweekly status reports on collection of the Schedule A Receivables and will make themselves available periodically to discuss collection status with the SPV Trustee and his counsel.

- **<u>Settlements</u>.** Before agreeing to any settlement of a Schedule A Receivable, the FBG Trustee will confer with the SPV Trustee and provide him with advance written notice of the proposed settlement and an opportunity to object. If the SPV Trustee objects and the parties cannot resolve the objection, the FBG Trustee will seek approval of the settlement under Bankruptcy Rule 9019 before proceeding.

25. These protections give the SPV Trustee visibility into collection efforts and a meaningful voice in any settlement, while leaving collection with the professionals best positioned to do the work and preserving all parties' rights pending resolution of the ownership dispute. The Application, by contrast, would hand one claimant exclusive control over disputed assets.

## <u>RESERVATION OF RIGHTS</u>

26. The FBG Trustee reserves all rights, claims, and defenses, including with respect to ownership of the Schedule A Receivables, the setoff and mutuality issues raised in the Application, and any fees or commissions. *See id.* ¶¶ 10 n.10, 15.

## <u>CONCLUSION</u>

For the foregoing reasons, the FBG Trustee respectfully requests that the Court enter an order denying the Application and granting the FBG Trustee relief as is equitable and just.

Houston, Texas
October 12, 2026

Respectfully submitted,

By: */s/ Joshua W. Wolfshohl*
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX 24038592)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Grecia V. Sarda (TX 24132092)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
gsarda@porterhedges.com

**PROPOSED COUNSEL FOR THE CHAPTER 7 TRUSTEE, EVA S. ENGELHART**

**CERTIFICATE OF SERVICE**

I certify that on October 12, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl