**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>PATTERSON INVENTORY, LLC, *et al.*,[1]<br><br>Debtors. | Case No. 25-90392 (CML)<br><br>Chapter 7<br>(Jointly Administered) |

# TRUSTEE'S REPLY IN FURTHER SUPPORT OF EMERGENCY APPLICATION TO AUTHORIZE THE EVOLUTION SPV DEBTORS' TRUSTEE TO COLLECT CERTAIN ACCOUNTS RECEIVABLE PURSUANT TO THE WIND DOWN ORDER

Ronald J. Sommers, the chapter 7 trustee (the "Trustee") for the Evolution SPV Debtors, submits this reply (the "Reply") in further support of the *Emergency Application to Authorize the Evolution SPV Debtors' Trustee to Collect Certain Accounts Receivable Pursuant to the Wind Down Order* [Docket No. 93] (the "Application") and in response to the objections of Bank of America, N.A., as ABL Agent [Docket No. 101] ("ABL Obj."), and the chapter 7 trustee of the FBG Debtors ("FBG Trustee") [Docket No. 102] ("FBG Obj.," and together, the "Objections").

## PRELIMINARY STATEMENT[2]

1. Neither the ABL Objection nor the FBG Trustee Objection refutes the primary problems that the Trustee's Application identifies. By the FBG Debtors' own reporting, Hilco appears to have recovered almost zero on BPI post-petition accounts receivable since its retention. And Hilco's approach to collecting receivables has been to negotiate with customers across every

[1] The debtors in these chapter 7 cases, along with the last four digits of each debtor's federal tax identification number, are: Patterson Inventory, LLC (2872) (Case No. 25-90392); Patterson Inventory Holdings, LLC (0079) (Case No. 25-90393); Starlight Inventory I, LLC (6698) (Case No. 25-90394); and Starlight Inventory Holdings I, LLC (6472) (Case No. 25-90395). The Evolution SPV Debtors' mailing address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not defined in this Reply have the meanings given in the Application. Unless otherwise noted, docket citations refer to Case No. 25-90392.

FBG Debtor at once, letting credits owed by one debtor erode receivables owed to another, even though setoff requires mutuality—*i.e.*, that the competing demands are between the same parties and in the same capacity or right. *See* Application ¶¶ 15–18. The Evolution SPV Debtors claim ownership of the SPV Receivables payable to BPI, so that netting threatens the value of their estates. Neither objector denies this risk. The FBG Trustee instead "reserves all rights" on "the setoff and mutuality issues raised in the Application." FBG Obj. ¶ 26. In other words, the FBG Trustee wants to keep the option to do exactly what the Application seeks to prevent. The Court should grant the Application.

2. *First*, the Objections argue that "replacing Hilco … with the Trustee" would "threaten[] to delay the collection process, diminish recoveries, and destroy value for creditors," ABL Obj. ¶ 1(b); FBG Obj. ¶ 18, and that the Trustee lacks expertise, a team, and a plan, ABL Obj. ¶ 28; FBG Obj. ¶ 19. Not true. The Trustee brings decades of experience as a bankruptcy trustee, and he has retained H. David Overbeeke—BPI's former owner, President, and CEO—to assist with "the collection of related accounts receivable." Docket No. 50 at 1–2; Docket No. 50-1 ¶¶ 3, 4(a). Mr. Overbeeke has "more than three decades of senior executive experience in the automotive, manufacturing, and distribution industries, including as President and Chief Executive Officer of Brake Parts Inc.," and that experience expressly includes "accounts-receivable management" and "inventory management and disposition." *See* Docket No. 50-1 ¶ 3.

3. *Second*, the objectors argue that the Court "already approved the framework for collecting BPI's receivables" in the Wind Down Order, *see* FBG Obj. ¶ 2, and that the Wind Down Order Extension does not grant the Trustee "any new or expanded authority to collect, settle, compromise, or otherwise resolve disputed receivables," *see* ABL Obj. ¶ 1(a). But the Trustee does not seek new or expanded authority that the Wind Down Order Extension withheld. He seeks,

as to seven BPI customers, the same authority over the SPV Receivables that the FBG Debtors already hold. And even if the requested relief required modifying the Wind Down Order, this Court has jurisdiction to do so.

4. *Third*, the ABL Agent's reliance on the Court's May 29, 2026 Summary Judgment Order is a *non sequitur*. The ABL Agent contends that "Evolution, through the Trustee, seeks to diminish and cabin" that order, which "rejected Evolution's claimed perfected security interest in non-purchased receivables." ABL Obj. ¶ 3. But whether Evolution holds a perfected lien on non-purchased BPI receivables is a separate question from whether the SPV Receivables belong to the Evolution SPV Debtors or BPI. The latter question is the subject of Adv. Proc. No. 25-03800, in which no party has yet established ownership. The ABL Agent complains that the Trustee's requested relief would "grant the practical incidents of ownership—exclusive authority to direct collection strategy, negotiate with customers, select collection professionals, resolve asserted defenses, and settle the receivables." *Id.* But the FBG Debtors and their agents exercise precisely that authority now, and they have not established ownership of the SPV Receivables either.

5. *Finally*, the FBG Trustee proposes various "protections" in Paragraph 24 of her objection—access to information, status updates, and notice and an opportunity to object to proposed settlements—but those "protections" address information rights, not control, and do nothing to reconcile the two estates' divergent interests. *See* FBG Obj. ¶ 24. In any event, the Trustee should receive those protections regardless of how the Court rules. Because the parties' interests appear to remain divergent and the protections do not address control, the protections proposed are insufficient. The Court should grant the Application.

## ARGUMENT

### I. THE OBJECTIONS DO NOT ANSWER THE CONCERNS RAISED IN THE APPLICATION

6. The Objections leave unanswered the concerns that prompted the Trustee's Application: Hilco has collected almost nothing, and it appears to be negotiating customer balances across every FBG Debtor at once.

7. *First*, neither the ABL Agent nor the FBG Trustee identifies any meaningful recovery by Hilco on the SPV Receivables. Hilco became the FBG Debtors' exclusive collection agent in April 2026. Application ¶ 13. According to the FBG Debtors' own reporting, between April 14 and August 1, 2026, the outstanding balance of BPI's post-petition receivables barely moved, and the balance owed by the seven customers listed on Schedule A of the Application moved even less. *Id.* As explained in the Application, Hilco's own tracker reveals unanswered emails, fragmented outreach, and what appears to be no recoveries. *Id.* ¶ 14 (citing Ex. 4).

8. Neither Objection rebuts that record. The ABL Agent ignores it and instead praises Hilco's "specialized collection experience." ABL Obj. ¶ 27. The FBG Trustee identifies no recovery of SPV Receivables; she argues that collecting large receivables "is rarely linear" and that the figures listed on Schedule A of the Application "predate conversion." FBG Obj. ¶ 12. But nothing suggests that the agents who recovered almost nothing before conversion will recover more after it. Indeed, the FBG Trustee acknowledges that collection activity may have "slowed in recent weeks" and she "recognizes the concerns the Application raises." *Id.* ¶¶ 3, 12. Given the paltry recovery to date, the Court should permit the Trustee to take over collections of receivables payable to BPI owed by the seven customers listed on Schedule A of the Application.

9. *Second*, neither the ABL Agent nor the FBG Trustee offers any solution to the risk that aggregate settlements will diminish recoveries to the Evolution SPV Debtors' estates. As the

Application explains, the Trustee understands that Hilco, Katten, and Troutman have been attempting to collect accounts receivable on an aggregate basis by negotiating one resolution covering everything each customer owes across all entities, rather than proceeding entity by entity—an approach that risks permitting credits owed by one debtor to reduce receivables owed to another. *See* Application ¶ 17; *see also id.* ¶¶ 16, 18 & Exs. 5–8. For at least some customers, the aggregate balance across all FBG Debtors is negative (because of credits owed by those FBG Debtors), while the balance owed to BPI alone is positive. *Id.* ¶ 18. Because setoff is "proper only where demands are mutual," a customer cannot apply a post-petition credit owed by one FBG Debtor against a post-petition debt it owes to BPI. *Id.* ¶ 15 (quoting *Cap. Concepts Props. 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994)). Aggregate settlements therefore may risk handing customers a discount on BPI receivables, funded by credits owed by other debtors, coming straight out of SPV Receivables that the Evolution SPV Debtors claim.

10. Neither objector has an answer for this problem. The ABL Agent never even mentions aggregate settlements or mutuality. And while the FBG Trustee acknowledges the "risk that aggregate, multi-entity settlements could affect BPI receivables in which he asserts an interest," *see* FBG Obj. ¶ 24, the FBG Trustee does not commit to collect SPV Receivables payable to BPI on a standalone basis or to stop netting other debtors' credits against them. Instead, the FBG Trustee "reserves all rights" on "the setoff and mutuality issues raised in the Application." *Id.* ¶ 26. That is not a solution. The FBG Trustee's only response is that the Trustee "does not identify a single receivable that has been mishandled, compromised, or lost." *Id.* ¶ 17. But that is wrong. The Trustee has joined (at Case No. 25-90399, Docket Nos. 3151, 3799) in Evolution's two turnover motions, which allege that the FBG Debtors mishandled and failed to segregate up to $21.2 million of SPV Receivables payable to BPI. *See* Case No. 25-90399, Docket Nos. 3144,

3792. But regardless, whether the Trustee must identify mishandled receivables misses the point. Hilco has collected next to nothing, and the Application cites several examples of Hilco pursuing aggregate settlements. *See* Application ¶¶ 16–17 & Exs. 5–8. The solution is not to wait until after mishandling of receivables occurs. The Application seeks to prevent further loss or mishandling while settlements of BPI receivables remain priced and pending. *See id.* ¶ 25.

## II. THE TRUSTEE IS BETTER POSITIONED THAN HILCO TO COLLECT THE SPV RECEIVABLES

11. The ABL Agent and FBG Trustee object to the Trustee taking over collection of accounts receivable—preferring Hilco—but the Trustee is in fact better-equipped than Hilco to collect the SPV Receivables identified on Schedule A of the Application. The objections rest on the false premise that replacing Hilco with respect to the collection of the SPV Receivables "threatens to delay the collection process, diminish recoveries, and destroy value for creditors." ABL Obj. ¶ 1(b); *see also* FBG Obj. ¶¶ 18–19. But that premise assumes that the FBG Debtors' incumbent agents have produced recoveries worth protecting. They have not. *See supra* § I. A transition cannot delay collections that are not happening. And while the FBG Trustee argues that the Trustee is "seeking to disrupt the status quo," *see* FBG Obj. ¶ 1, that argument rings hollow when the FBG Trustee herself has recently been in the process of re-engaging collections counsel. *See* FBG Obj. ¶ 10 n.2 (citing retention applications of Troutman, Clark Hill, and Katten).

12. The ABL Agent and FBG Trustee next attack the Trustee's experience and ability to collect accounts receivable. The ABL Agent asserts that the Application "identifies no comparable collection expertise, established collection infrastructure, or existing familiarity with the accounts at issue," and both objectors describe the Trustee's professionals as "yet-to-be-retained." ABL Obj. ¶ 28; FBG Obj. ¶ 19. Neither mentions Mr. Overbeeke, whom the Trustee has already retained. *See* Docket No. 81. Far from lacking "familiarity with the accounts at issue,"

Mr. Overbeeke owned BPI and served as its President and CEO until First Brands Group acquired it in 2020. Docket No. 50-1 ¶ 4(a). His more than three decades of senior executive experience include "supply-chain and accounts-receivable management," and he attested that he is "qualified to assist the Trustee with the marketing and sale of the Debtors' inventory ***and the collection of related accounts receivable***." *Id.* ¶ 3 (emphasis added).

13. Mr. Overbeeke ran BPI. The ABL Agent, by contrast, touts Hilco's familiarity with "the complex relationships among the FBG Debtors." ABL Obj. ¶ 27. That contrast captures the Application's concern: Hilco applies an off-the-rack approach to all FBG Debtors, while the Trustee would tailor his approach to BPI receivables. In addition to Mr. Overbeeke, the Trustee has retained Elsberg Baker & Maruri PLLC ("EBM") as special litigation counsel for the Evolution SPV Debtors. *See* Docket No. 52. If a Schedule A customer refuses to pay, the Trustee will not need to assemble a litigation team from scratch.

14. Nor would the Trustee need to "start over." FBG Obj. ¶ 19. The Trustee's Application covers seven customers, and the FBG Trustee offers to share "the customer documents relevant to collection of the Schedule A Receivables." *Id.* ¶ 24. Moreover, the FBG Trustee is reorganizing her own team: she has proposed Katten for assets "other than receivables." *Id.* ¶ 10 & n.2. The Trustee also understands that Troutman and Clark Hill had been pens-down since the Conversion Order and only recently filed renewed retention applications. *See* Case No. 25-90399, Docket Nos. 3873, 3875. If there were ever an opportune time to transition responsibility for collecting the SPV Receivables, it is now, while the FBG Trustee is still reassembling her own team.

15. Replacing Hilco with respect to the customers listed on Schedule A is also justified because Hilco's outreach to customers appears to be lacking. According to BPI's accounts

receivable records that were provided to the Trustee, as of August 1, 2026, approximately $[redacted] of BPI's post-petition accounts receivable are owed by NAPA US (GPC) and UAP (NAPA Canada) (together, "NAPA"). *See* Application at Schedule A. Thus, NAPA makes up approximately [redacted]% of the receivables reflected on Schedule A of the Application. On May 19, 2026, Hilco (through Katten) [redacted]. *See* Ex. 3, Docket No. 94-4, at 22–23. [redacted]. *See* Ex. 4, Docket No. 94-5. Yet, based on Hilco's collections tracker, [redacted]. *Id.*[3] More than six months have passed since Hilco was retained, and five months have passed since the May 19 demand letter. The notion that replacing Hilco would materially disrupt collections (which have not been happening) is absurd.

## III. THE OBJECTORS' REMAINING ARGUMENTS SHOULD BE REJECTED

### A. The Wind Down Order Extension Gives the Trustee the Same Authority as the FBG Debtors, and the Court Can Modify It Regardless

16. The ABL Agent devotes nearly eight pages to the argument that the Wind Down Order Extension conferred nothing more than "signature authority to close already-authorized sales." ABL Obj. ¶ 25; *see id.* at 4–11. That argument rests principally on one clause. Paragraph 1 grants the motion "for the reasons stated on the record at the hearing held on July 9, 2026," and the ABL Agent contends that this language makes the hearing transcript "control[] the order's scope." *Id.* ¶¶ 8–9. That reading would swallow the rest of the order. Paragraph 2 extends "[t]he authority granted to the Chapter 11 Debtors in the Wind Down Order" to the Trustee, without

[3] The most recent update on the tracker for NAPA states the following: [redacted] *See* Ex. 4, Docket No. 94-5.

limitation. *See* Docket No. 61 ¶ 2. That authority includes the authority to perform under the Consulting Agreement, whose Receivables Services provisions cover the collection, servicing, settlement, and resolution of receivables. Application ¶¶ 6, 8; Consulting Agreement § IV(A)(1). If Paragraph 1's recital of reasons confined the order to signing bills of sale, Paragraph 2's extension of the Debtors' authority would be meaningless. Moreover, a recital of the ***reasons*** for granting a motion may explain the order, but it does not override the order's operative paragraphs.

17. Nor do the July 9, 2026 statements themselves confine the Trustee to only signing bills of sale. The Trustee's counsel explained that the motion did not seek to "change anything about the wind down order" or "impair anybody's rights," ABL Obj. ¶ 10 (quoting July 9, 2026 Hr'g Tr. 5:12–25), and counsel for the Ad Hoc Group confirmed that the order made no "lien or ownership determination," *id.* ¶ 18 (quoting July 9, 2026 Hr'g Tr. 10:19–21). The Application is consistent with these representations: it seeks the same authority the FBG Debtors already hold, determines no ownership, and segregates proceeds subject to a universal consent right. *See* Application ¶¶ 2, 10. The ABL Agent's own counsel described the Wind Down Order Extension as a way to "allow the [Trustee] to basically participate in the Wind Down Order process." ABL Obj. ¶ 18 (quoting July 9, 2026 Hr'g Tr. 11:8–14). The Trustee has been largely excluded from the receivables aspect of that process.

18. In any event, the ABL Agent's argument leads nowhere. Even if the Wind Down Order Extension did not reach receivables (it does), the Court retains jurisdiction over the Wind Down Order to modify it. *See* Wind Down Order ¶ 65. And Sections 105(a) and 704(a)(1) of the Bankruptcy Code, which the Application invokes and the ABL Agent never addresses, independently support the relief sought by the Application. *See* Application ¶ 5. Section 704(a)(1) directs the Trustee to "collect and reduce to money the property of the estate for which such trustee

serves," and Section 105(a) authorizes "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §§ 105(a), 704(a)(1). Changed circumstances warrant the relief sought.

### B. The Application Preserves the Status Quo as to Ownership and Accords With the Court's Orders

19. The FBG Trustee asserts that granting the Trustee's Application "changes the status quo rather than preserving it." FBG Obj. ¶ 21; *see also* ABL Obj. ¶ 29. That mischaracterizes the Application. The Application stated that the requested relief "preserves the status quo ***with respect to the various parties' competing claims to the SPV Receivables***." Application ¶ 2 (emphasis added). And it does. Ownership will be resolved in Adv. Proc. No. 25-03800, and the Proposed Order does not touch that dispute. The Application just changes who collects the SPV Receivables.

20. The requested relief also accords with the Court's orders. The January 20 Order directs that proceeds of assets alleged to be Evolution collateral "get parked somewhere in a way that it doesn't get commingled with anything else." Application ¶ 20 (quoting January, 2026 H'rg Tr. at 48:13-14). And the Conversion Order provides that nothing in it permits the use of assets "held by a party other than the DIP Secured Parties or ABL Secured Parties that is subject to an asserted and not withdrawn claim" absent consent or further order. *Id.* ¶ 22 (quoting Conversion Order ¶ 5). Neither Objection addresses either of these orders. Hilco's aggregate approach risks violating both, because nothing stops Hilco from using BPI receivables (which include SPV Receivables alleged as Evolution collateral) to settle balances on an aggregate basis. *See id.* ¶ 21.

### C. The Summary Judgment Order Has No Bearing on the Application

21. The ABL Agent next argues that the Application seeks to "diminish and cabin" the Court's Summary Judgment Order in Adv. Proc. No. 26-03006. *See* ABL Obj. ¶ 3. This argument is both wrong and irrelevant. *First*, this Application does not concern whether Evolution has a

first-priority lien on BPI receivables; it concerns who collects certain disputed receivables. Indeed, the Proposed Order contemplates sending every collected dollar into the SPV-ABL Wind Down Account pending resolution of the ownership dispute—not to Evolution or the Evolution SPV Debtors. *See* Application ¶ 10. *Second*, whether Evolution holds a perfected, first-priority lien in BPI receivables does not matter here because, as the Trustee contends, the SPV Receivables belong to the Evolution SPV Debtors, not BPI. That dispute is pending in Adv. Proc. No. 25-03800. A lien in BPI receivables says nothing about receivables that belong to a different estate.

### D. The FBG Trustee's Proposed Protections Fall Short

22. Finally, the FBG Trustee offers document access, biweekly status reports, and advance notice of settlements, with an opportunity to object and, absent resolution, a Rule 9019 motion. *See* FBG Obj. ¶ 24. Those measures address information and after-the-fact review, not control. By the time the Trustee could object, the FBG Trustee's professionals would have already set the settlement's terms, netting included. The FBG Trustee's proposal does not require standalone collection of BPI's receivables or bar netting other debtors' credits against them. They leave strategy and negotiations with professionals accountable only to the FBG Trustee. And the FBG Trustee offers these measures "[w]ithout conceding" anything. *Id.*

23. The Trustee should have received these information rights the moment the Court entered the Wind Down Order Extension. The proposed protections set a floor, and the Trustee should receive them regardless of how the Court rules on the Application. In any event, because the proposed protections do not adequately alleviate the concerns raised by the Trustee, the Court should grant the Application.

## CONCLUSION

24. For the foregoing reasons, the Trustee respectfully requests that the Court grant the Application and enter an order, substantially in the form of the Proposed Order, (a) granting the

Trustee the exclusive right to collect, settle, or otherwise resolve the post-petition accounts receivable payable to BPI identified in Schedule A of the Application, (b) authorizing the Trustee's consultants and/or attorneys to pursue the collection, settlement, and resolution of such receivables on the Trustee's behalf, and (c) granting such other and further relief as the Court deems proper and just.

Respectfully submitted this 19th day of October, 2026,

**JONES MURRAY LLP**

*<u>/s/ Erin E. Jones</u>*
Erin E. Jones (24032478)
Christopher R. Murray (24081057)
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Email: erin@jonesmurray.com
chris@jonesmurray.com

*Counsel for Ronald J. Sommers,*
*Chapter 7 Trustee for the SPV Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all counsel of record registered in these Chapter 7 Cases through CM/ECF.

*<u>/s/ Erin E. Jones</u>*
Erin E. Jones